STATE v. LEO LYLES, Appellant.—No. 39311.—185 S. W. (2d) 642.

Division Two, February 5, 1945.

Rehearing Denied, March 5, 1945.

---

*John A. Nolan* and *Dalton W. Schreiber* for appellant; *I. Joel Wilson* of counsel.

*Roy McKittrick*, Attorney General, and *Harry H. Kay*, Assistant Attorney General, for respondent.

WESTHUES, C.—Leo Lyles was convicted in the circuit court of St. Louis county, Missouri, of murder in the first degree and his punishment assessed at death. He duly appealed from the judgment imposed. This is the second appeal. In the first trial appellant was sentenced to suffer the death penalty but this court remanded the case for retrial because of the giving of an erroneous instruction. See State v. Lyles, 351 Mo. 1174, 175 S. W. (2d) 587. See also a companion case, State v. Talbert, 351 Mo. 791, 174 S. W. (2d) 144.

The only point briefed by appellant on this appeal is stated as follows in his brief:

"It is the contention of the defendant that the court prejudicially erred in overruling the verified motion filed by his attorneys praying the court to order a jury summoned to try and decide the question of his becoming insane after the information had been filed against him and before his trial thereon after the court had taken testimony on the facts alleged therein and deciding said motion thereon."

Appellant's motion to have a sanity inquiry was based on Sec. 4046, R. S. Mo., 1939, Mo. R. S. A., which reads as follows:

"If any person indicted for any crime in this state shall, after his indictment and before his trial on such charge, become insane, and the circuit or criminal court wherein such person stands charged shall have reason to believe that such person has so become insane, it shall be the duty of such court to suspend all further proceedings against such person under said charge, and to order a jury to be summoned to try and decide the question of the insanity of such person, and said judge shall notify the prosecuting attorney of the pendency of such inquiry. The alleged insane person shall be notified of such proceeding, unless the court order such person to be brought before it. R. S. 1929, sec. 3657."

It will be noted that the section provides that if the court shall have reason to believe that such person has so become insane the inquiry as to his sanity shall be had before a jury. In this case the court was not of such opinion. The affidavit of the defendant's attorneys filed with the motion and the evidence offered in support thereof did not convince the court. The state introduced evidence to refute the contention of the defendant. The record shows that the court also considered the evidence at the first trial of the case. A reading of the opinion on the former appeal will disclose that the state contended the defendant feigned insanity. The record contains ample evidence to sustain that contention and the evidence introduced on the motion supports the ruling of the trial court. This court, construing the statute above quoted, determined that a trial court need not call a jury to try the question of a defendant's sanity merely because the defendant asked for such an inquiry and supported his motion with evidence. State v. Church, 98 S. W. 16, l. c. 20, 21, 199 Mo. 605; State v. Mitchell, 204 S. W. 801. The rulings announced in those cases are supported by an abundance of authority from other jurisdictions. In 23 C. J. S. 234, we find the following:

"The question raised on a motion for trial of the issue of defendant's sanity is not whether he is actually insane, but whether the facts are sufficient to raise a doubt of his sanity, that is, a doubt in the mind of the judge and not in that of some third person, such as counsel for the defense.

"The law contemplates that the doubt of defendant's sanity may arise either from the court's own observation or from evidentiary facts

presented to it, and when the question is raised by motion the court should, in determining it, weigh and consider all relevant facts bearing thereon, whether offered in support or in opposition.''

Numerous cases will be found cited in support of the text. The trial court in this case did not decide in refusing defendant's motion whether the defendant was sane or insane. The question decided was that the court did not have reason to believe that the defendant was insane. The defendant testified in the hearing on the motion. The trial court had the opportunity to observe him and note his conduct. From the record ▉▉▉ before us we are of the opinion that the ruling of the court was correct. Appellant has cited many authorities in his brief and urges that the question of a person's sanity is a question of fact triable by a jury. These authorities and the contention made do not meet the issue. As stated above the trial court did not decide whether appellant was sane or insane. The only question decided was that the court had no good reason to believe that the defendant was insane and therefore did not grant the motion to try that issue before a trial on the charge of murder. The comment of the court at the conclusion of the hearing indicates the basis of the court's ruling. Note a portion of the comment:

''It seems to me that this proceeding here under the statute is simply for the purpose of the Court to determine if the Court has reason to believe the necessity of a sanity inquiry. It is just advisory to the Court.''

The question must be decided against appellant.

▉▉ In the trial of the case the state offered evidence to support the charge but the defendant did not offer any evidence. If the defendant had any defense the record does not disclose its nature. The state's evidence justifies the following statement. On the afternoon of September 30, 1941, four young colored men, the defendant Leo Lyles, William Edward Talbert, Arthur Lee Butler and William Clayton, were seen driving along Bellefontaine Road in St. Louis county, Missouri, in what later proved to be a stolen car. While driving at a rather high rate of speed the car turned over. The four men went to the station agent at Spanish Lake for aid and were referred to a filling station. Later they accosted Marvin Twillmann who was feeding his stock. Using guns as an inducement, they forced him to get into his truck, drive down a private road to the main road and across the railroad tracks. There they met a car driven by Martin Twillmann, a cousin of Marvin, who was accompanied by his mother. At this point the truck ran into a ditch and was stalled. The colored boys stopped Martin's car and ordered the occupants to get out. As Martin got out of the car he was shot by defendant Lyles and died within a few hours. When the mother heard the shots she began to scream and as she attempted to run from the scene several shots were fired at her, one of the bullets passing through her body. She was

under a doctor's care for two years before recovering. What occurred thereafter is not material to the issues before us. The evidence fully justified a verdict of murder in the first degree. The shooting of the deceased seems to have been done without any reason and the evidence does not indicate any mitigating circumstances. The extreme penalty was fully justified. We have examined the record proper and find it free from error. The judgment is affirmed and the execution of sentence is hereby ordered to be carried out on Friday, March 23, 1945. *Bohling* and *Barrett, CC.;* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.